**SOLVENTOL CHEMICAL PRODUCTS, Inc.,
v. LANGFIELD.**

No. 9215.

Circuit Court of Appeals, Sixth Circuit.
April 6, 1943.

900

John A. Blair, of Detroit, Mich. (John A. Blair and Harness, Dickey & Pierce, all of Detroit, Mich., on the brief), for appellant.

William T. Woodson, of Chicago, Ill. (Edward S. Rogers, William T. Woodson, and James H. Rogers, all of Chicago, Ill., Charles C. Andrews, of Detroit, Mich., and Hill, Hamblen, Essery & Lewis, of Detroit, Mich., on the brief), for appellee.

Before SIMONS, HAMILTON, and McALLISTER, Circuit Judges.

HAMILTON, Circuit Judge.

This suit commenced as an action under Sec. 4915, R.S., 35 U.S.C.A. § 63, seeking a judgment authorizing the Commissioner of Patents to register appellant's trade-mark "Solventol" while appellee's registered trade-mark "Solvite" was extant.

Appellee filed a counterclaim praying that appellant be enjoined from using the name Solventol on the ground that it was a colorable imitation and an infringement of appellee's registered trade-mark, Solvite. The lower court dismissed appellant's petition and sustained appellee's counterclaim.

Two issues are presented: (1) Is there clear error in the court's finding that appellant's trade-mark, Solventol, is confusingly similar to appellee's registered trade-mark, Solvite, in the light of the purposes for which the parties used these marks, and (2) Did appellee sustain the burden resting on it to show that the sale of appellant's goods under the trade-mark, Solventol, has caused, or is likely to cause, the purchasing public to believe that such goods are the product of appellee.

Appellee manufactures and sells, under its trade-mark, Solvite, a cleaning preparation which, when mixed with gasoline, is used for cleaning garments, draperies, fabrics, rugs, carpets, automobile seats or other articles.

Appellee and his predecessors have used this trade-mark in the manufacture and sale of this preparation since 1914, and it has been sold throughout the United States, but largely in the State of Michigan and particularly the city of Detroit. Appellant's

trade-mark, No. 243,223, was registered in the Patent Office June 12, 1928.

Charles A. Campbell has been engaged in the manufacture of soap and water soluble cleaning materials in Detroit, Michigan, since 1923. In 1932, he devised a formula for an alleged new type water soluble cleaning compound and began to manufacture and sell it in that year under the trade-mark Solventol. Appellant, Solventol Chemical Products Company, was created in 1935 for the purpose of acquiring, which it did, the trade-marks, trade name and business of Campbell who is now its president. On October 14, 1936, appellant filed an application in the United States Patent Office to register the word "Solventol" as its trade-mark for a general cleaning compound to be used in household and industrial cleaning.

On March 30, 1938, appellee filed in the Patent Office, notice of opposition (15 U.S. C.A. § 86) to the registration of the mark, Solventol, on the ground that he was selling a cleaner under the registered trade-mark Solvite, and that Solventol so nearly resembled his mark that it might cause confusion and mistake in the mind of the public and deceive purchasers.

On April 24, 1939, the Examiner of Trade-Mark Interferences, sustained appellee's opposition on the ground that the two marks were confusingly similar and on January 7, 1940, the Commissioner affirmed the decision of the Examiner. 44 U.S.P.Q. 261. Appellant, in this action, seeks to reverse the Commissioner.

For a time, appellant and its predecessor sold their products in bulk to consumers using large quantities of water soluble detergent compounds for use in cleaning floors and walls. During the period from August 1932 to the end of 1935, appellant sold 1,200,000 pounds of its product under the trade-mark Solventol and received gross therefor approximately $84,000.

In 1936, appellant put its product under the name Solventol, in small retail packages for sale in department, grocery, hardware and drug stores. It first introduced the package to the buying public by a direct house to house demonstration and selling campaign sales in the Detroit area, being made to approximately 150,000 households in this way. Sale of appellant's product was further expanded by direct house to house solicitation throughout Michigan, Ohio, Indiana, Pennsylvania, parts of Nebraska, Missouri, Minnesota and New York. Within eight years appellant expended approximately $400,000 in advertising and sales promotion. Its sales to retailers in small packages and to industrial users in bulk increased rapidly from 1935 to and including 1940. In the latter year, appellant's sales in small packages to retailers totaled $106,410.67 and its bulk sales, $190,355.25. Appellant had no actual knowledge of the existence of appellee's trade-mark until March 1938, although the respective products were sold in the same communities and through the same sale outlets.

Appellee acquired his formula and trademark in 1924, from the Wyeth Chemical Company of New Jersey. He devotes his time largely to the business of the Northville Laboratories, Inc., of Northville, Michigan, a suburb of Detroit, and his manufacture and sale of Solvite is conducted through agents. His gross sales ranged from $1,217.54 in 1936 to $792.29 in 1940 up to December 12th. His product and trade-mark are not generally advertised although he does some street car and newspaper advertising.

■■■■ The burden rests on appellant to show manifest error in the decision of the Patent Office Tribunal and that of the lower court. Morgan v. Daniels, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657; United States ex rel. Baldwin Company v. Robertson, 265 U.S. 168, 44 S.Ct. 508, 68 L.Ed. 962. Each party put into the record additional evidence not considered by the Commissioner of Patents.

Appellee employed two persons to visit stores in the city of Detroit and ask for Solvite cleaner. These parties testified they visited thirteen stores, the first two of which had no Solvite, but offered Solventol, Dic-A-Doo, Spic-and-Span, the clerk in the second store stating that the last was the best cleaner on the market. In the next store the merchant picked up a can of Solventol and sold it to the shoppers without any comment. In the next store when the two shoppers asked for Solvite cleaner the clerk made several inquiries about it and then said he had never heard of it; he then picked up a can of Solventol and said, "This is Solventol," but didn't attempt to sell it to them. At the next store when the shoppers asked for Solvite cleaner the clerk inquired whether they wanted Solventol or Soilex, saying the former came in three sizes, but the latter in only one and showed

them several packages to ascertain if any of them was what they wanted. On being answered in the negative the clerk gave them a sample can of Soilex. The next inquiry was at a Kroger store and when asked for Solvite cleaner, the clerk said he never heard of it, but that he had heard of Solventol, although he didn't suggest that they buy it. At the next store when asked for Solvite cleaner the clerk inquired if they wanted it for cleaning and on being told they did, he said "Solventol is what you want," and sold them a 25-cent size. At the next store the clerk said he never heard of Solvite but that he had Soilex and Solventol. At the next store the clerk said he didn't have Solvite but that he did have Solventol and brought back a 25-cent can of that and a sample can of Am-Best cleaner remarking "there are a thousand cleaners on the market." At the next store the clerk said he had never heard of Solvite and as they were leaving the store he said he had some Solventol that maybe that was what they meant but didn't attempt to sell it to them. At the next store the clerk had never heard of Solvite and asked many questions about it and then advised that she had Solventol but did not attempt to sell it. At the next two stores the clerks had never heard of Solvite and one of them suggested that maybe they wanted Solventol, selling them a 25-cent can which he said could be returned if not satisfactory.

Appellant also employed two persons who called on over three hundred arbitrarily selected grocery, hardware and drug stores in the Detroit area asking in each of them for a dry cleaning soap known as Solvite. These shoppers testified that in no store were they offered Solventol although on inquiry they found that 120 of the stores had it in stock.

The Trade-Mark Act, 15 U.S.C.A. § 85, provides in substance that any mark may be registered by which the goods of the owner may be distinguished from other goods of the same class, unless such mark is owned or used by another and appropriated to merchandise of the same descriptive properties or which so nearly resembles a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public, or to deceive purchasers.

■ Excluding descriptive phonetics and symbols, the registerability of a trade-mark depends on the common-law test as to whether the proposed mark is so similar in appearance or sound to one then in use by another as to lead the public to believe that the goods on which the proposed mark appears indicate the goods of a prior mark.

■ In considering the probability of confusion or mistake in the mind of the public, due weight must be given not only to the characteristics of the trade-mark, but also to the distinguishing differences or indistinguishable similarities of the goods themselves, with reference to their form, composition, texture and quality and the manner in which they are advertised, displayed, sold and used. California Packing Corporation v. Tillman & Bendel, Inc., 17 C.C.P.A., Patents, 1043, 40 F.2d 108.

As appears from the labels on the respective containers, there is some difference in their descriptive properties, some dissimilarity in the appearance of the packages and in the contents of the containers.

It is plainly stated on appellee's container that its product is usable only when dissolved in gasoline or naphtha and it is just as plainly stated on appellant's container that its product is usable only when dissolved in water. The similarity of use of the products of the parties is found only in the fact that each is a cleaning compound usable on cloth and that each is sold in small containers and moves in the same retail trade channels.

■ In our opinion the evidence supports the findings of the Patent Office and of the lower court that the goods of the parties are of the same general descriptive properties. While it is true that the product of appellant is to be used in one way for cleaning purposes and that of appellee in another way, each may be used for the cleaning of the same materials and for household purposes. Revere Sugar Refinery v. Salvato, 18 C.C.P.A., Patents, 1121, 48 F.2d 400. However, in considering the question as to whether confusion would likely result from the registration of appellant's trade-mark, it is proper to weigh the circumstances under which the goods are and will be sold, together with the dissimilarity of both the goods and the respective trade-marks.

■ Neither of the marks in question is of that class known as arbitrary or fanci-

ful. Each falls quite clearly into the class of suggestive marks characteristic of the product exemplified. Morgan's Sons Co. v. Ward, 7 Cir., 152 F. 690, 12 L.R.A.,N.S., 729. Such trade-marks may be valid but as to them the field is open to other traders to employ equally suggestive marks provided only that they be not deceptively similar. Ostermoor & Co. v. Rose Spring & Mattress Co., 55 App.D.C. 307, 5 F.2d 268; Citrus Soap Company v. Royal Lemon Products Company, 8 Cir., 2 F.2d 972. The word "solvent" is purely descriptive of any cleaning compound whether semi-solid or liquid and "Sol" has been used so long by businesses as part of a trade-mark name for cleaning compounds that neither use of the prefix "Solvent" nor the prefix "Sol" may be so exclusively appropriated by one manufacturer or tradesman as to wholly deny its use in any manner by others. The idea, sought to be conveyed to the mind of the purchaser by the respective trade-marks of the parties to these proceedings is that each is selling a solvent for use in cleaning, and while the prefix "Sol" or "Solvent" is common to both marks, each is but descriptive of the product indicated, and being of common right, neither party can claim the exclusive use of either, alone or as the dominating element of a compound word. Ansco Photoproducts, Inc. v. Eastman Kodak Company, 57 App.D.C. 246, 19 F.2d 720; Miles Laboratories v. United Drug Company, 27 C.C.P.A., Patents, 1273, 112 F.2d 814; Yeasties Products, Inc. v. General Mills, Inc., 22 C.C.P.A., Patents, 1215, 77 F.2d 523; Affiliated Products v. Crazy Water Company, 26 C.C.P.A., Patents, 1331, 104 F.2d 366; Purex Corporation v. United Drug Company, 21 C.C.P.A., Patents, 753, 67 F.2d 918.

▮ The suffixes "vite" and "tol" distinguish one combination from the other and give an identifying character to the trade designation which makes it unlikely that one trade-mark could, with the exercise of ordinary care, be mistaken for or be confused with the other. They look unlike, are spelled differently and are phonetically dissimilar.

▮ Taking into consideration the descriptive syllables of the respective trade-marks in question and the differences in the suffixes and the dissimilarity of the goods on which the respective marks are used we are of the opinion that the registration of the trade-mark "Solventol"

will not be likely to cause confusion or mistake in the minds of the public and that appellant is entitled to have its mark registered.

▮ In our opinion the trial court failed to give effect to the rule that the adoption of a suggestive mark by one trader, will not preclude any other trader from employing another mark of equal suggestiveness provided such other mark be not deceptively similar, when descriptive letters, syllables or phrases are eliminated. Bartlett Company v. Arbuckle Bros., 52 App.D.C. 267, 285 F. 1001.

As we view the case of Langfield v. Solvit-All Corporation, 18 C.C.P.A., Patents, 1313, 49 F.2d 480, relied on by appellee, it is not contrary to the conclusion here reached. In that case, appellee here instituted opposition proceedings against the registration of the trade-mark "Solvit-All." The sole contention of the proposer of the mark was that his goods were not of the same descriptive properties as those of appellee. The court decided they were. However, no consideration was given by the court to the distinction between fanciful and arbitrary trade-marks and descriptive marks.

Langfield v. Brady, 26 C.C.P.A., Patents, 908, 101 F.2d 530 involved the opposition of appellee here to the registration of the trade-mark Solvoline, which was used on a dry cleaning fluid. The court found that the products were of the same descriptive properties as those covered by the trade-mark Solvite and that the two marks were confusingly similar. In the cited case, the two products were used for dry cleaning; the only distinction between them being that the goods of the proposer there were liquid and those of the opposition were a soap, soluble in gasoline. Both were used for the same purpose and both liquefied when ready for use. The court gave no consideration to the descriptive properties of the trade-marks in question.

Disregarding the registerability of appellant's trade-mark, there is no independent evidence in the record that appellant has infringed upon appellee's common-law rights or has competed with appellee unfairly, or that appellant has been guilty of unfair trade practices toward appellee.

This cause is reversed with directions to the court to enter a judgment entitling appellant Solventol Chemical Products, Inc., to register its trade-mark "Solventol" in the

904

United States Patent Office under the Act of February 20, 1905, as amended, 15 U.S.C.A. § 81 et seq., and to authorize the Commissioner of Patents to grant such registration to appellant. Appellee's counterclaim is dismissed.