INDUCT–O–MATIC CORPORATION, Plaintiff-Appellant,

v.

INDUCTOTHERM CORPORATION, Defendant-Appellee.

No. 83–1271.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 20, 1984.

Decided Oct. 31, 1984.

Rehearing and Rehearing En Banc Denied Dec. 18, 1984.

Michael R. Dinnin (argued), Harness, Dickey & Pierce, Birmingham, Mich., for plaintiff-appellant.

Arthur H. Seidel (argued), Seidel, Gonda, Goldhammer, P.C., Philadelphia, Pa., for defendant-appellee.

Before KENNEDY and WELLFORD, Circuit Judges, and RUBIN, District Judge.*

WELLFORD, Circuit Judge.

In June 1978, Inductotherm, defendant-appellee, filed a trademark opposition proceeding in the United States Patent Office to protest the grant of a trademark registration to plaintiff-appellant for its mark "INDUCT-O-MATIC" (IOM). The Trademark Examiner, however, already had ruled in May 1978 that the mark "INDUCT-O-MATIC" was entitled to registration over Inductotherm's registered mark, "INDUCTO."[1] In October 1978, Inductotherm filed suit against IOM in the United States District Court of New Jersey, which dismissed the suit for lack of jurisdiction. IOM then filed an action for declaratory judgment in the United States District Court of Michigan on February 1, 1979, seeking a determination that IOM's use of "INDUCT-O-MATIC" did not result in any trademark infringement, unfair competition, or false designation of origin in regard to Inductotherm's registered trademark, "INDUCTO." Inductotherm, counterclaiming, contended that such usage did result in these violations of law. IOM appeals from the judgment of the district court granting Inductotherm an injunction prohibiting IOM's further use of the mark "INDUCT-O-MATIC."

Inductotherm began repairing and servicing induction heating and melting equipment in 1953 under that name. In 1954,

---

* The Honorable Carl B. Rubin, Chief Judge, U.S. District Court for the Southern District of Ohio, sitting by designation.

1. The Trademark Examiner initially rejected IOM's registration application on the ground that the mark "INDUCT-O-MATIC" was confusingly similar to Inductotherm's "INDUCTO" trademark. The application was approved on IOM's assertion by affidavit that its goods did not compete with those sold by Inductotherm.

Inductotherm began using the term "IN-DUCTO" and the tradename "Inductotherm" on its equipment and since 1957 has been manufacturing and selling this equipment throughout the United States, including the State of Michigan. On July 14, 1964, Inductotherm became the owner of United States Trademark Registration No. 773,193 for the trademark, "INDUCTO."

IOM, chartered as a Michigan corporation, began doing business under the tradename "Induct-O-Matic" and began using the mark "INDUCT-O-MATIC" on or about January 4, 1961. Prior to 1969, its business consisted primarily of rebuilding and repairing induction equipment; thereafter, it began selling induction heating equipment in various states under its tradename and mark.

▋ The district court first considered and granted relief on Inductotherm's counterclaim of trademark infringement by IOM in violation of the Lanham Act, 15 U.S.C. § 1114. Under the Act, the test of trademark infringement is "likelihood of confusion" as to the source of origin. *See, e.g., WSM, Inc. v. Tennessee Sales Co.*, 709 F.2d 1084, 1086 (6th Cir.1983). This Court has adopted a two-level test for reviewing lower court findings of likelihood of confusion:

> [T]he determination of what is the state of affairs regarding each factor .... [considered by the lower court in determining whether there is a likelihood of confusion] is a finding of fact reviewed on the clearly erroneous standard, but the further determination of the likelihood of confusion based on those factors is a legal conclusion.

*Frisch's Restaurants, Inc. v. Elby's Big Boy*, 670 F.2d 642, 651 (6th Cir.), *cert. denied* 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982) (quoting *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 443–44 (9th Cir.1980)).

In reaching its holding that there was a likelihood of confusion between Inductotherm's trademark, "INDUCTO," and IOM's tradename and mark, "INDUCT-O-MATIC," the district court considered the following list of factors, which are in substantial conformity with those relevant factors on this issue set forth by this Circuit in *Frisch's Restaurant*, 670 F.2d at 648:

1) the degree of similarity between the marks in appearance, sound, and connotation;

2) the similarity of goods or services for which the marks are used;

3) the area and manner of concurrent use;

4) the strength of the defendant's mark;

5) the sophistication of the purchasers of the relevant goods;

6) plaintiff's intent;

7) and any instances of actual confusion.

▋ The district court found a high degree of similarity between "INDUCTO" and "INDUCT-O-MATIC," noting that "a sophisticated witness and possible purchaser ... indicated that 'INDUCT-O-MATIC' would connote a product produced by [Inductotherm]." The court also found that "the differences in lettering and hyphenating are very slight, and likely to cause confusion."

This finding is not clearly erroneous.

IOM contends that the differences in spelling, number of syllables, the use of hyphens, and sound and visual appearance establish little likelihood of confusion between the marks at issue. We agree with the district court that these differences are slight and unlikely to prevent confusion. The use of hyphens distinguishes between the two marks only on a visual level since this difference is absent when the words are spoken. Other distinguishing factors cited by IOM depend solely on the addition of "MATIC" to its trademark. We agree with the district court that this is a weak and nondistinctive term. The latter aspect of our holding is discussed more fully in our review of the district court's ruling in regard to the strength of Inductotherm's trademark.

▋ The District court's finding that the marks in question are used on similar goods also is not clearly erroneous. The

district court correctly noted that IOM sells primarily induction heating equipment, whereas Inductotherm sells primarily induction melting equipment. Since most of Inductotherm's equipment can also be used for induction heating, the effect of the differences in the equipment is greatly lessened. Moreover, Inductotherm does sell some induction *heating* equipment and also performs virtually all of the services offered by IOM.

■ IOM's argument that it does not directly compete with Inductotherm is belied by its failure to contest the district court's finding in regard to concurrent use that "both parties sell in the same states, have some identical customers, and have the same competitors." Moreover, the similarity of goods and services offered by IOM and Inductotherm indicates the probability of direct competition. In any event, "direct competition between the products is not a prerequisite to protective relief." *Continental Motors Corp. v. Continental Aviation Corp.*, 375 F.2d 857, 861 (5th Cir.1967).

■ In regard to the fourth factor, the district court found that "INDUCTO" was a strong mark, "distinctive in its tendency to identify the goods sold under that mark as emanating from ... [Inductotherm]." In reaching this conclusion, the district court found that "INDUCTO" was a coined word with no dictionary or technical meaning, under which Inductotherm has had a large volume of sales and has established an excellent reputation. In contrast, it found IOM's mark to be "weak and undistinctive," noting that "[t]he 'matic' suffix indicates automatic, and is widely used in trademarks for this purpose."

■ IOM argues that the district court erred in failing to recognize that "induct" is a common English word, meaning to lead in, introduce or induce, that is suggestive of induction, and refers to a number of trademark registrations incorporating the word "induct" by third parties engaged in the electromagnetic induction field. We agree with the district court that these registrations do not, on the whole,[2] dilute any distinctive nature "INDUCTO" may have since these registrations do not involve products that compete with IOM and Inductotherm. *See, e.g., Price-Pfister Brass Mfg. Co. v. Milwaukee Faucets, Inc.,* 311 F.2d 817, 818 (C.C.P.A.1963). We find, however, that the district court was in error in its finding that "INDUCTO" was a "coined" word, which implies that it is an arbitrary or fanciful term. As noted in *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir.1977), *cert. denied* 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978) (citations omitted):

> A term for which trademark protection is claimed will fit somewhere in the spectrum which ranges through (1) generic or common descriptive and (2) merely descriptive to (3) suggestive and (4) arbitrary or fanciful.
>
> \* \* \* \* \* \*
>
> A generic or common descriptive term is one which is commonly used as the name or description of a kind of goods. It cannot become a trademark under any circumstances.
>
> \* \* \* \* \* \*
>
> A merely descriptive term specifically describes a characteristic or ingredient of an article. It can, by acquiring a secondary meaning, *i.e.,* becoming "distinctive of the applicant's goods" ..., become a valid trademark.
>
> \* \* \* \* \* \*
>
> A suggestive term suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods. Such a term can be pro-

---

2. One third party registration, "Inductron," by TOCCO Company does appear to relate to products that are in competition with those of IOM, but IOM produced no evidence that the Inductron products were well promoted or recognized by consumers. *See Scarves By Vera, Inc. v. Todo Imports, Ltd.,* 544 F.2d 1167, 1173–74 (2d Cir.1976).

tected without proof of a secondary meaning.

\* \* \* \* \* \*

An arbitrary or fanciful term enjoys the same full protection as a suggestive term but is far enough removed from the merely descriptive not to be vulnerable to possible attack as being merely descriptive rather than suggestive.

This Circuit in *Solventol Chemical Products v. Langfield*, 134 F.2d 899 (6th Cir.), *cert. denied* 320 U.S. 743, 64 S.Ct. 44, 88 L.Ed. 441 (1943), clearly held that trademarks at issue must be broken down into their component parts in order to determine their appropriate class in the trademark spectrum. As between "Sonventol" and "Solvite," the marks at issue in *Langfield*, the court ruled that the component common to each term was descriptive:

Neither of the marks in question is of that class known as arbitrary or fanciful. Each falls quite clearly into the class of suggestive marks characteristic of the product exemplified. *Morgan's Sons Co. v. Ward*, 7 Cir., 152 F. 690, 12 L.R.A., N.S., 729. Such trade-marks may be valid but as to them the field is open to other traders to employ equally suggestive marks provided only that they be not deceptively similar. *Ostermoor & Co. v. Rose Spring & Mattress Co.*, 55 App. D.C. 307, 5 F.2d 268; *Citrus Soap Company v. Royal Lemon Products Company*, 8 Cir., 2 F.2d 972. The word "solvent" is purely descriptive of any cleaning compound whether semi-solid or liquid and "Sol" has been used so long by businesses as part of a trade-mark name for cleaning compounds that neither use of the prefix "Solvent" nor the prefix "Sol" may be so exclusively appropriated by one manufacturer or tradesman as to wholly deny its use in any manner by others. The idea sought to be conveyed to the mind of the purchaser by the respective trade-marks of the parties to these proceedings is that each is selling a solvent for use in cleaning, and while the prefix "Sol" or "Solvent" is common to both marks, each is but descriptive of the product indicated, and being of common right, neither party can claim the exclusive use of either, alone or as the dominating element of a compound word.....

*Id.* at 902–03.

In the instant case, analysis of the component parts of the marks at issue clearly indicates that "INDUCTO" is not an arbitrary or fanciful term. The district court was in error to the extent that it implied otherwise in ruling that "INDUCTO" had no dictionary or technical meaning.

The dominant common component in each mark at issue is "induct." As noted earlier, this word has a known meaning, to lead, introduce or induce. We agree with IOM that this term is a suggestive one in that it suggests to the imaginative that each company is engaged in the electromagnetic induction field, as opposed to describing a particular product for a particular use, as in *Langfield*.

The court in *Langfield* further directed that "descriptive letters, syllables or phrases" be eliminated in determining whether two trademarks are deceptively similar. 134 F.2d at 903. In applying this test to the case before it, the court found:

The suffixes "vite" [in Solvite] and "tol" [in Solventol] distinguish one combination from the other and give an identifying character to the trade designation which makes it unlikely that one trademark could, with the exercise of ordinary care, be mistaken for or be confused with the other. They look unlike, are spelled differently and are phonetically dissimilar.

*Id.* at 903.

In the instant case, "o" is a descriptive vowel common to "INDUCTO" and "INDUCT–O–MATIC" and must therefore be deleted under our ruling in *Langfield*. Thus, only the term "matic" distinguishes the two marks. "Matic" is clearly a descriptive phrase, and, as found by the district court, indicates automation. As such, it also requires deletion. Accordingly, unlike the situation in *Langfield*, there is no "identifying character to the trade designa-

tions" of "INDUCTO" and "INDUCT–O–MATIC," other than the suggestive term common to both, "induct," that makes it unlikely that one trademark will be mistaken for another.[3]

Application of the *Langfield* test leads to the conclusion that "INDUCT–O–MATIC" is deceptively similar to "INDUCTO." Our discussion and application of this test with regard to the fourth factor of trademark strength are in response to defendant's argument that "INDUCTO," because it contains "induct," is a weak trademark, and indicate the district court's error in determining that "INDUCTO" was a strong mark because it had no dictionary or technical meaning.

■■■■ Generally, proof of secondary meaning is not required with regard to a suggestive term, *Miller*, 561 F.2d at 79, nor by the owner of a registered trademark, *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 46–47 (5th Cir.1975). We note, however, that the other bases for the district court's finding that "INDUCTO" was a strong mark, the heavy advertising by Inductotherm employing its trademark over a number of years and the well established reputation of Inductotherm as a leader in the induction field, is supported by the record, but this is insufficient to support a conclusion of a strong mark under all the circumstances.

We also point out that at least one court has indicated that if a mark has become incontestable under 15 U.S.C. § 1115(a),[4] its lack of distinctiveness cannot be raised in litigation. *See Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 377, 381 (7th Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). *But cf. Park 'N Fly, Inc. v. Dollar Park & Fly,*

*Inc.*, 718 F.2d 327, 331 (9th Cir.1983) ("The law in this circuit ... is different [from *Union Carbide, supra* ]. [A] registrant [cannot] use the incontestable status of its mark ... offensively, as a sword to enjoin another's use."), *cert. granted to resolve conflict,* —— U.S. ——, 104 S.Ct. 1438, 79 L.Ed.2d 760 (1984). Finally, we note that:

> [W]hether a mark is regarded as "strong" or "weak", "original, arbitrary, fanciful" or "generic, descriptive, geographic" is but one of the elements to be considered in determining whether confusion is likely to result.

*Continental Motors Corp.*, 375 F.2d at 861.

In regard to the fifth factor, the court found that the purchasing of a "large order is done by sophisticated buyers" who "would not be readily confused," but that those persons handling the purchase "of components and parts are not as sophisticated and thus would likely be confused." It has been observed that the "expertise of purchasers does not always assure the absence of confusion." *Communications Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1252 (4th Cir.), *cert. denied* 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 245 (1970). Further, as noted in *Wincharger Corp. v. Rinco., Inc.*, 297 F.2d 261, 264 (C.C.P.A. 1962):

> [I]n most instances technicians would use the products of either party and they are a discriminating group of people but that does not eliminate the likelihood of purchaser confusion here. Being skilled in their own art does not necessarily preclude their mistaking one trademark for another when the marks are as simi-

---

**3.** A situation similar to the instant one was presented in *Price-Pfister,* 311 F.2d at 818, in which the court made the following ruling in regard to the marks, "ADJUSTO" and "ADJUSTA–FIT":

> With respect to appearance, meaning, and sound, the dominant portions of the trademarks differ from each other by the substitution in the suffix portions of an "A" in appellant's mark for the "O" in appellee's mark and the addition of the descriptive term "FIT" to appellant's mark. We think these differences

do not obviate the likelihood of confusion, mistake or deception of purchasers arising from appellant's use of its mark on its goods. The addition of the term "FIT" to appellant's mark creates an impression that it might well be related to appellee's "ADJUSTO" family of goods.

**4.** This statute contains a number of defenses to incontestability, one of which is discussed, *infra,* wherein we conclude that Inductotherm's trademark has become incontestable.

lar as those here in issue, and cover merchandise in the same general field.

We have some question as to whether this factor was adequately analyzed by the district court, but in finding that the marks at issue are similar and cover competing. goods, we also find under the foregoing authority that the district court was not clearly erroneous in concluding that the factor of purchaser sophistication "also militates against [IOM]." This is a close question and not a determinative factor in this case.

In regard to the important sixth factor, the district court found that IOM's "intent was not clear," but that IOM knew of Inductotherm's trademark when IOM adopted its name. The court concluded:

It is the law [see, e.g., USM, Inc., 709 F.2d at 1087 n. 1] that a jr. user is charged with the obligation to avoid the adoption of a trademark which might be confused with a sr. mark .... Where plaintiff knew of the sr. mark and nevertheless proceeded to adopt a similar mark, he assumes a risk, and all doubt should be resolved in favor of the senior user.

IOM argues initially that the district court made no finding that it had knowledge of Inductotherm's trademark. The district court in the following Finding of Fact referred to IOM's knowledge of Inductotherm rather than its knowledge of "INDUCTO":

84. Given the sales volume of defendant, its advertising and reputation, and, also considering the contradictory testimony surrounding the selection of the name Induct-O-Matic, the court finds that D. DeArment [President of IOM] *knew of Inductotherm* when the name Induct-O-Matic was selected.

(Emphasis added).

In its Conclusions of Law, however, the court twice referred to IOM's knowledge of the *trademark*, "INDUCTO," making reference to Finding of Fact # 84. We conclude, however, that the record does not support a finding that IOM had knowledge

of Inductotherm's trademark when IOM adopted its name.

The district court did not make a factual finding that IOM knew of the "INDUCTO" mark, only that Mr. DeArment, IOM's president, knew of Inductotherm. Even if we assume that its failure to include knowledge of "INDUCTO" in its factual finding was merely inadvertent, since it did conclude as a matter of law that IOM knew of Inductotherm's trademark when it adopted its name, there is no sufficient basis for such a finding. The district court bases its finding first on the sales volume of defendant-appellee. Inductotherm began selling "INDUCTO" trademark equipment in 1957 and sold such marked equipment in Michigan beginning in 1958. Its national sales volume in 1959 was only $1,093,479 and in 1960, $1,616,988. Michigan sales were 8% to 10% of the total, or less than $160,000 in the larger sales volume year. Those two years are critical since IOM adopted its name before its incorporation on January 4, 1961. The district judge also concluded, inconsistently, that Inductotherm did not learn of IOM until 1975, even though the latter had over one million dollars in annual sales by 1970, primarily in Michigan.

To support its finding and conclusion of knowledge, the district court also relied on advertising. It made a finding that Inductotherm began advertising in *Metal Progress,* a trade journal, in 1960, and that Mr. DeArment had subscribed to *Metal Progress* for twenty years. However, the earliest *Metal Progress* advertisement in evidence was in the December 1960 issue which came out in 1961. Thus, it provides no basis for finding Mr. DeArment knew of Inductotherm or "INDUCTO" before January 4, 1961. Inductotherm's total advertising budget for 1958 was only $17,900; in 1959, $13,800; and in 1960, $20,000. Those sums would hardly provide a basis for an assumption or a reasonable inference of knowledge of Inductotherm in 1960.

Finally, the district court relied on the contradictory testimony surrounding the selection of the name "INDUCT–O–MATIC." Three witnesses testified about the

selection of the corporate name prior to incorporation. All denied they had heard of Inductotherm or its mark "INDUCTO." The three did not agree on all the persons present at the meeting when the name was adopted and there was some disagreement as to the specific person who suggested that they adopt "INDUCT–O–MATIC." The meeting had occurred more than twenty years before the trial. It was for the trial judge to weigh their credibility but it was undisputed that the corporate name was registered on January 4, 1961, and so must have been adopted *before* that date. It was immaterial which of those present when the name was adopted suggested the name, since there was simply no evidence that any of them knew of Inductotherm or its mark "INDUCTO." Merely because there was some disagreement about a meeting twenty years before does not provide a basis for finding that one of those present knew of Inductotherm and, more importantly, of "INDUCTO."

The district court's finding that Mr. DeArment knew of the trademark "IN-DUCTO" in January 1961 is therefore clearly erroneous. IOM has established its good faith usage and is entitled to use the mark "INDUCT–O–MATIC" in Macomb County, Michigan and other Michigan counties where it was first local user.

■■■ We are also disposed to agree with IOM's argument that the district court employed an incorrect *rationale* in finding that IOM was not entitled to the "good faith prior use" defense, 15 U.S.C. § 1115(b)(5), to the Act's incontestability provision, 15 U.S.C. § 1065.

Section 1065 provides:

The right of the registrant to use [its] registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, is incontestable.

Section 1115(b)(5) provides (emphasis added):

(b) If the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the affidavit filed under the provisions of said section 1065 subject to any conditions or limitations stated therein ... except when one of the following defenses or defects is established:

\*    \*    \*    \*    \*    \*

(5) That the mark whose use by a party is charged as an infringement *was adopted without knowledge of the registrant's prior use* and has been continuously used by such party or those in privity with him from a date prior to registration of the mark under this chapter or publication of the registered mark under subsection (c) of section 1062 of this title: Provided, however, that this defense or defect shall apply only for the area in which such continuous prior use is proved....

In *Old Dutch Foods, Inc. v. Dan Dee Pretzel & Potato Chip Co.*, 477 F.2d 150 (6th Cir.1973), this Court held that the adoption and use of a mark in certain areas by one whose use antedated the registration of a similar mark by another but postdated the registrant's use in other areas has exclusive rights under 15 U.S.C. § 1115(b)(3) to use its mark in the area it has preempted through use of its mark, *when that mark was adopted without knowledge of the prior use in other areas by the registrant.* This defense seems available to IOM because, as earlier determined, the district court was clearly erroneous in finding that IOM had knowledge of Inductotherm's mark when it incorporated in Michigan and began employing its mark. Accordingly, the district court's ultimate conclusion that IOM could not invoke the § 1115(b)(5) defense was not correct.

In regard to the seventh factor, the district court found:

[T]here was no evidence of actual confusion. Although this is a significant

consideration, this finding is far from determinative, since it is not clear how such confusion would actually come to light.

IOM concedes, as it must, that "actual confusion need not be established in order to find trademark infringement," but argues that "the absence of any actual confusion over more than 21 years is strong evidence that there is no likelihood of confusion." We find it significant that the Trademark Examiner initially refused to register IOM's mark in 1978 because of likelihood of confusion between IOM's mark and Inductotherm's previously registered mark. *See supra* note 1. Since we have found that several conclusions on which the district court relied in making a decision are clearly erroneous, we conclude albeit reluctantly that we should remand this controversy to the district court for further consideration in light of these holdings.

The district court also found that IOM violated 15 U.S.C. § 1125(a) pertaining to the false designation of origin counterclaim raised by IOM, and that IOM violated Michigan common law relating to unfair competition. Because we have concluded that we must remand this controversy for the reasons discussed, we also remand for reconsideration the district court's judgment for Inductotherm on these counterclaims.

The final argument raised by IOM, that Inductotherm is barred from injunctive relief by laches, will need to be reconsidered on remand as well. This court noted in *United States v. Weintraub*, 613 F.2d 612, 619 (6th Cir.1979), *cert. denied* 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980) (quoting *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961)):

"Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." ... [L]aches is an equitable defense and ... it can certainly be raised only by one who comes into equity with clean hands.

The Supreme Court in *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 419, 36 S.Ct. 357, 362, 60 L.Ed. 713 (1916), further noted:

As to laches and acquiescence, it has been repeatedly held, in [trademark] cases where defendants acted fraudulently or with knowledge of plaintiffs' rights, that relief by injunction would be accorded ....

Since we have held that the district court was in error in ruling that IOM had knowledge of Inductotherm's use of "INDUCTO" when it adopted its mark, this argument may be found to have merit.

Accordingly, we remand this controversy to the district court for further proceedings consistent with this opinion.