**TRUCKSTOPS CORPORATION OF AMERICA**

v.

**C–POULTRY COMPANY LIMITED.**

No. 82–3578.

United States District Court,
M.D. Tennessee,
Nashville Division.

Dec. 27, 1983.

Russell F. Morris, Jr., Anthony J. McFarland, Bass, Berry & Sims, Nashville, Tenn., Walter D. Ames, F.M. deRosa, Watson, Cole, Grindle & Watson, Washington, D.C., Frederick V. Perry, Ryder System Inc., Miami, Fla., for plaintiff.

Iran W. Vickery, Vickery & Jones, El Dorado, Ark., H. Frederick Humbracht, Jr., Dearborn & Ewing, Nashville, Tenn., Richard H. Compere, Hume, Clement, Brinks, William & Olds, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM

WISEMAN, Chief Judge.

This trademark infringement case is before the Court as a declaratory judgment action. The plaintiff, Truckstops Corporation of America [Truckstops], seeks a declaratory judgment that it has not infringed the defendant's trademark "Country Pride." (Nos. 1,026,305; 1,026,306, and 1,026,898). The defendant, C-Poultry Company Limited [C-Poultry], has brought a counterclaim for trademark infringement, common law infringement, dilution of its trademark, and injury to its business reputation. The Court conducted a full trial of the issues presented by this case, received post-trial briefs from the parties, and now makes the following findings of fact and conclusions of law.

C-Poultry obtained a federal registration for the mark "Country Pride" and the same mark with a barn between the words and over a hill of flowers in December of 1975. C-Poultry presently uses this full mark in marketing fresh and frozen poultry for sale in grocery stores. Truckstops uses the mark "Country Pride" for its restaurants and motels at truckstops. Truckstops has used this mark since April 1982 and does not own a federal registration for the "Country Pride" mark. Both parties have acquired rights to the mark from previous users. C-Poultry obtained rights to the mark from Wenning Packing Company, which used the mark in Tennessee and five other states from 1959 until 1980 and registered it for prepared meat products in 1978. (Plaintiff's Exhibit 92, Request No. 11; Defendant's Exhibits 13). Truckstops obtained rights to the mark for its restaurants from Perlis Truck Terminal in Cordele, Georgia, on February 10, 1982. The Perlis Terminal has used the mark since the Spring of 1972. (Plaintiff's Exhibits 1–4, 47, Perlis Testimony).

■ The Lanham Act proscribes use in commerce of any imitation of a registered mark without permission when such "use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Courts have stressed that the "key element in any infringement action is the likelihood of confusion." *Hindu Incense v. Meadows*, 692 F.2d 1048 (6th Cir. 1982) (citing *Purolator, Inc. v. EFRA Distributors, Inc.*, 687 F.2d 554, 559 (1st Cir. 1982); *Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326, 329 (6th Cir.), *cert. denied*, 414 U.S. 858, 94 S.Ct. 66, 38 L.Ed.2d 108 (1973). Trademark protection is not limited to products specified in the registration that directly compete with those under

trademark, but extends to "any goods which are 'likely to cause confusion' in the public's mind." *Atlas Supply Co. v. Atlas Brake Shops, Inc.*, 360 F.2d 16, 18 (6th Cir.1966) (citations omitted).

A trademark that is merely descriptive will not be protected against an alleged infringer unless the senior user shows not only that the subsequent use of the mark is likely to cause confusion but that the descriptive mark has acquired a secondary meaning. *See Hindu Incense v. Meadows,* 692 F.2d 1048, 1050 (6th Cir.1982); *Jewel Companies, Inc. v. Westhall Co.*, 413 F.Supp. 994, 1000 (N.D.Ohio 1976). A "secondary meaning" is "a showing that the public identifies the trademark with a particular source rather than the product" *WLWC Centers, Inc. v. Winners Corp.*, 563 F.Supp. 717 (M.D.Tenn.1983) (Quoting 1 J. McCarthy, *Trademarks and Unfair Competition* § 11.5 (1973)).

A mark that is suggestive does not require a showing of secondary meaning to be protected. *Hindu Incense v. Meadows,* 692 F.2d 1048, 1050 (6th Cir. 1982); *WLWC Centers,* 563 F.Supp. at 719. Although the distinction between "suggestive" and "descriptive" is somewhat nebulous, *WLWC Centers,* 563 F.Supp. at 720, one useful rule is as follows:

> A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods.

*Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (2d Cir.1976) (quoting *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968)). The registration of a mark by the Patent Office without a required showing of secondary meaning raises a rebuttable presumption that the mark is suggestive rather than merely descriptive. *Money Store v. Harriscorp Finance, Inc.*, 689 F.2d 666, 673 (7th Cir.1982); *WLWC Centers,* 563 F.Supp. at 720.

The plaintiff has argued that C-Poultry's advertising has converted its mark to one that is descriptive by using the common usage of the name "Country Pride" to emphasize qualities and characteristics of its poultry. The plaintiff has produced advertisements where the defendant uses such phrases as "Country fresh," "welcome back to the country," "freshness takes pride," and "Country taste that you will serve with pride." (Plaintiff's Exhibit 91–K; Defendant's Exhibits 19, 20). While this evidence bears heavily on the strength of the defendant's mark, it is not sufficient to overcome the presumption that the mark is suggestive. The mark still requires imagination to reach a conclusion as to the nature of the goods, especially for purchasers who do not read the defendant's advertising. Accordingly, the Court concludes that the defendant's mark is suggestive and holds under these circumstances that the appropriate means of limiting the defendant's mark is by affording it limited protection if it is weak rather than holding it descriptive and invalid. *See WLWC Centers,* 563 F.Supp. at 720.

In *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir.1982), the Sixth Circuit adopted eight factors that it found useful in demonstrating whether there is a likelihood of confusion among consumers:

1. strength of the [registrant's] mark;
2. relatedness of the goods;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. likely degree of purchaser care;
7. [alleged infringer's] intent in selecting the mark;
8. likelihood of expansion of the product lines.

*Id.* (citing *Toho Co., Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790 (9th Cir.1981)). Because the Court has held that C-Poultry has a valid trademark, it will proceed to determine whether a consideration of these factors leads to the conclusion that Truck-

stops' use of the mark "Country Pride" has led to a likelihood of confusion.

The Court finds that the mark "Country Pride" is very weak. The strength of a trademark depends on its distinctiveness or tendency to identify goods sold as produced by a particular source. *McGregor-Doniger v. Drizzle, Inc.*, 599 F.2d 1126, 1131 (2d Cir.1979). "Country Pride" is not distinctive; it is a combination of words with common usage. C-Poultry's advertising has emphasized the common usages of the words, underscoring their lack of distinctiveness. *See WLWC Centers*, 563 F.Supp. at 722. The policy affording weak marks limited protection reflects the same goal as the policy that prevents registration of descriptive names: to prevent the monopolization or appropriation of common words. *See Standard Paint Co. v. Trinidad Asphalt Manufacturing Co.*, 220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536 (1911); *Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326, 329 (6th Cir.), *cert. denied*, 414 U.S. 858, 94 S.Ct. 66, 38 L.Ed.2d 108 (1973); *Jewel Companies, Inc. v. Westhall Co.*, 413 F.Supp. 994, 1000 (N.D.Ohio 1976). To hold the mark in this case to be a strong one would not serve this policy.

Additionally, the large number of other users of the mark "Country Pride" demonstrates the weakness of the mark. *See Atlas Supply Co. v. Atlas Brake Shops, Inc.*, 360 F.2d 16, 18 (6th Cir.1966); *WLWC Centers*, 563 F.Supp. at 722. The mark "Country Pride" was formerly used on many different products and services and is presently used for several products including fresh vegetables sold at wholesale, horsemeat, utensils, and bread, and is used by another restaurant in Amarillo, Texas. (*See* Plaintiff's Exhibit 92, Requests for Admission numbers 13, 31, 41, 43, 65, 73). C-Poultry has succeeded in persuading others to discontinue use of the mark. This demonstrates widespread registration and use of the mark.

In *In re Colonial Stores, Inc.*, 216 U.S. P.Q. 793 (T.T.A.B.1982), the Trademark Appeals Board affirmed the denial of a registration of the mark "Country Pride" for bread, finding that the mark was likely to cause confusion with the defendant's products, which are also sold in retail stores. The Board did not disagree, however, with the conclusion that "Country Pride" was a weak mark. *See id.* at 793–94. This Court also credits expert testimony underscoring the weakness of the "Country Pride" mark.

The Sixth Circuit has held that "the strong mark enjoys greater protection while the weak mark is afforded little support." *Hindu Incense v. Meadows*, 692 F.2d 1048, 1050 (6th Cir.1982). Where a mark is weak, courts are less inclined to extend trademark protection to unrelated products not specifically named in the registration. *Atlas Supply Co. v. Atlas Brake Shops, Inc.*, 360 F.2d 16, 18 (6th Cir.1966) (citing *Dwinell-Wright Co. v. National Fruit Products Co.*, 140 F.2d 618 (1st Cir.1944)). A weak mark will be entitled to more protection, however, if it has attained a secondary meaning in the minds of the consuming public. *WLWC Centers*, 563 F.Supp. at 723; *Jewel Companies, Inc. v. Westhall Co.*, 413 F.Supp. 994.

To establish secondary meaning, C-Poultry has the burden of proving that the "primary significance of the term in the mind of the consuming public is not the product but the producer." *WLWC Centers*, 563 F.Supp. at 723 (citations omitted). It has not met this burden. C-Poultry argues first that its extensive advertising has transformed its weak mark into a more distinctive one, and argues that its surveys have proved this. (Defendant's Post-Trial Brief at 12). The defendant's surveys are not entitled to great weight, however, because the form of the questions was misleading and because the questions were designed by counsel. *See Boehringer Ingelheim G.m.b.H. v. Pharmadyne Laboratories*, 532 F.Supp. 1040, 1058 (D.N.J. 1980). Moreover, the survey counted an association of the name "Country Pride" with the name of the store where the chicken was sold as a correct answer. The survey does not demonstrate public identification of the name with the producer.

The plaintiff's surveys, on the other hand, although they are used mainly to show no actual confusion, show a low rate of identification of the mark "Country Pride" with chicken. (*See* Plaintiff's Exhibit 77).

The defendant's outstanding sales record and advertising expenses do not prove secondary meaning. *See WLWC Centers*, 563 F.Supp. at 723; *Ralston Purina Co. v. Thomas J. Lipton, Inc.*, 341 F.Supp. 129, 134 (S.D.N.Y.1972). Finally, the extensive third party use of the mark "Country Pride" is strong support for the finding that no secondary meaning has attached to the defendant's mark. *See Empire National Bank of Traverse City v. Empire of America FSA*, 559 F.Supp. 650, 656 (W.D.Mich.1983). The defendant's mark is therefore weak and is entitled only to limited protection.

The second element for consideration is the relatedness of the goods. In *In re. Pick-N-Pay Supermarkets, Inc.*, 185 U.S. P.Q. 172, 173 (T.T.A.B.1974) the Trademark Trial and Appeal Board held that there is a "pertinent and intimate relationship between [foods and food services] so that the use of the same or similar mark is likely to cause confusion." In this case, however, the products are not so related as to be confusingly similar. The plaintiff's restaurants are not geared toward chicken. The defendant's products require preparation, the plaintiff's are food services and hotel accommodations to be consumed on the premises. The products are not in direct competition with one another.

In determining the similarity of the marks, one must decide on the basis of "the total effect of the designation, rather than on a comparison of individual features." *WLWC Centers*, 563 F.Supp. at 725 (Citing Restatement of Torts § 729, comment B (1938)). The overall impression of the mark is what matters. *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 502 (5th Cir.1979). Although the trade names in this case are identical, their presentation differs. C-Poultry's mark is distinguished by the calico pattern under the words and by the barn drawing between the words. Truckstops' mark is generally associated with a Truckstops of America sign close by, and has no decorative presentation. Thus, although the marks are similar they are not dramatically so, and in the context of the other factors the similarity is not likely to cause confusion.

The next factor to consider is evidence of actual confusion. The leading case in this Circuit, *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir.1982), held that although "evidence of actual confusion is not necessary to a finding of likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion." *Id.* (quoting *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980)). The defendant admitted in its responsive pleading that it had no evidence of actual confusion between its products and the services of the plaintiff's predecessor in interest. (Plaintiff's Exhibit 92, Request for Admission Number 2). Moreover, the plaintiff produced a survey showing that patrons of the plaintiff's restaurants in Las Cruces, New Mexico and Atlanta, Georgia, do not confuse the restaurants with the defendant's chicken products and thereby perceive a common source. (Plaintiff's Exhibit 77 at 11 (maximum of 4 percent confusion at Las Cruces where the defendant's products are well known). A similar survey at stores in Albuquerque and Marietta, Georgia, showed that those persons who identified "Country Pride" as a mark for chicken products and indicated an awareness of "other products or services" of the same name (8 percent), none could identify the plaintiff's restaurants. (Plaintiff's Exhibit 78 at 10–11). While these results may not be projectable to other areas, they are convincing proof of the insufficient evidence of actual confusion. The defendant produced no witness to testify to confusion. In light of the weakness of the mark and the lack of direct competition between the parties, the plaintiff has made a strong showing of no confusion.

The marketing channels used by the parties are markedly different. The great majority of the plaintiff's customers, 70 to 100 percent, are truck drivers. (Deposition of Anne McNeal p. 89). The defendant, on the other hand, markets toward shoppers at grocery stores who, according to C-Poultry's marketing agent, are "housewives between the ages of twenty-five and forty-nine, with family income of eight thousand to fifteen thousand annually." (Thomas Deposition at 17). The defendant has stressed that Truckstops has attempted to reach the same customers as C-Poultry by appealing to local families and automobile tourists, and that planned expansion by Truckstops will increase confusion. Nevertheless, marketing channels remain different. The products are not marketed side-by-side, nor are they marketed primarily to the same clientele.

In *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir.1982), the court stressed the low degree of purchaser care in selecting "fast food" products, finding it unlikely that consumers of fast food would discover any mistake based on similarity of trademark prior to patronizing the offending restaurant. This is not a case of direct competition between fast food restaurants using the same mark, however, where a low degree of purchaser care would be more significant. Moreover, purchasers of packaged chicken may pay more careful attention to the contents of the packages than the "impulse buying" described in *Frisch's*. The truckers who patronize the plaintiff's restaurants also are more selective than "fast food" customers because they often need to purchase large amounts of fuel and to use specialized credit card services. (*See* Plaintiff's Exhibits 44, 45). The public thus exercises more than casual care in purchases of these products, causing very little customer confusion.

■ The defendant does not contend that the plaintiff adopted its name in "an attempt to ride upon the good will created by defendant." (Defendant's Post-Trial Brief at 43). The Sixth Circuit has held that intent is a critical factor, one that may justify the inference of confusing similarity where a name is adopted to deprive another of the benefit of a mark. *Frisch's Restaurants*, 670 F.2d at 648. The defendant asserts that Truckstops exercised bad faith in selecting the name "Country Pride" for its restaurants after it was notified by its attorney of the defendant's use of the mark. The defendant argues that this "bad faith" is not relieved because the plaintiff adopted its name on the advice of an attorney. *See Gioia Macaroni Co., Inc. v. Joseph Victori Wines*, 205 U.S.P.Q. 986, 989 (E.D.N.Y.1979) (attorney's advice no excuse for bad faith failure to investigate use of strong mark on closely related goods). The Court cannot conclude that the plaintiff exercised bad faith in adopting a weak mark for its name where its services are not closely related to the defendant's products and where it secured the advice of two attorneys competent in trademark law prior to adopting its mark.

■ The last factor to consider is the likelihood of expansion along product lines. There was no proof presented in this case that the defendant has any plans to open restaurants. "Clearly the absence of any present intention or plan indicates that such expansion is less, rather than more, probable." *McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1135–36 (2d Cir.1979). C-Poultry argues that Truckstops is in C-Poultry's "area of natural expansion" and should be enjoined. *See Koffler Stores, Ltd. v. Shoppers Drug Mart, Inc.*, 434 F.Supp. 697, 704 (E.D.Mich. 1976), *aff'd mem.*, 559 F.2d 1219 (6th Cir. 1977) (citations omitted). This argument, however, is basically a concession on C-Poultry's part that it has not prevailed on this factor. Although the defendant stresses that some other companies that market food products have developed restaurant outlets, it has not demonstrated that this is a natural expansion, much less that C-Poultry is likely to take this step. It would be imprudent, in light of all the factors under consideration and the products themselves, to grant exclusive rights

to a weak mark based on a very speculative showing of likelihood of expansion. *See Sheller-Globe Corp. v. Scott Paper Co.,* 204 U.S.P.Q. 329, 334 (TTAB 1979) (courts should be reluctant to grant a "right in gross" to a mark).

A consideration of all the facts presented in this case leads to the conclusion that Truckstops has not infringed the "Country Pride" name. Given the finding that "Country Pride" is a weak mark, it is entitled to a narrow range of protection. The other elements for consideration of likelihood of confusion do not preponderate in favor of C-Poultry. Whatever inconvenience C-Poultry will suffer is simply the risk that it took when it took "Country Pride" as its mark. *See Jewel Companies, Inc. v. Westhall Co.,* 413 F.Supp. 994, 1000 (N.D.Ohio 1976). Judgment will therefore be entered in favor of the plaintiff on all grounds.