**WYNN OIL COMPANY and Classic Car Wash, Inc.**

v.

**Michael F. THOMAS.**

No. 2–85–0127.

United States District Court, M.D. Tennessee, Northeastern Division.

June 25, 1986.

Roy S. Gordet, Hamrick, Hoffman, Guillot & Kazubowski, San Jose, Cal., John J. Mulrooney, Parrish & Mulrooney, Memphis, Tenn., for plaintiffs.

Floyd R. Hodge, Knoxville, Tenn., for defendant.

## MEMORANDUM

MORTON, Senior District Judge.

Plaintiffs bring this action alleging federal trademark infringement under 15 U.S.C. § 1114; federal unfair competition under 15 U.S.C. § 1125(a); trademark dilution and injury to business reputation under T.C.A. § 47–25–512; violation of Ten-

nessee Consumer Protection Act under T.C.A. § 47–18–104; fraudulent state service mark registration under T.C.A. §§ 47–25–510 and 47–25–503; and common law trademark infringement and unfair competition. The defendant counterclaims, seeking cancellation of plaintiffs' U.S. service mark, alleging infringement of a registered mark under T.C.A. § 47–18–104, and common law unfair competition and trademark infringement. Both parties seek injunctive relief, compensatory and punitive damages, and costs and attorney fees. For the reasons set forth hereinafter, judgment shall be entered for the defendant under the plaintiff's complaint and for the plaintiff in the defendant's counterclaim. Each party shall bear his own costs and attorney fees.

The plaintiff Wynn Oil Company (hereinafter Wynn), a California corporation, sells car care products, including solid and liquid waxes, cleaning kits, fragrances, and vinyl and leather finishers under the federally issued trademark CLASSIC. Wynn was issued the mark CLASSIC on September 9, 1975. Wynn also owns the service mark "Classic Car Wash," registered on January 22, 1983, for car wash services, although it neither owns nor operates any car washes. The plaintiff Classic Car Wash, Inc., a California corporation, owns car washes and franchises car washing services. Classic Car Wash, Inc., allegedly holds a license from Wynn to use the service mark "Classic Car Wash." The defendant, Michael F. Thomas, a Cookeville, Tennessee, resident, owns and operates five car wash operations under the name "Classic Car Wash" or "Classic Car Wash Systems," all of which are located in Tennessee.

### WYNN OIL CO. V. THOMAS

The court will first examine Wynn's claim to exclusive use of the trademark "CLASSIC." Wynn has used the word "CLASSIC" in the sale of various car wash products since February 1952,[1] and it owns an incontestable U.S. trademark registration issued on September 9, 1975 for the

mark "CLASSIC." This court does not pass directly on the issue of whether CLASSIC may become a trademark under any circumstances because of its common, descriptive nature. It is, at best, a "merely descriptive" term and thereby an inherently weak mark. *See generally Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir.1984). Since the word "classic" describes a characteristic of a product, it becomes a valid trademark only by acquiring a secondary meaning; that is, by becoming distinctive of the plaintiff's goods. The term "classic" is not distinctive; it is a word of common usage. The policy of affording weak marks limited protection reflects the same goal as the policy that prevents registration of descriptive names—to prevent the monopolization or appropriation of common words. *Truckstops of America v. C-Poultry Co.*, 596 F.Supp. 1094, 1098 (M.D.Tenn.1983) *citing Standard Paint Co. v. Trinidad Asphalt Manufacturing Co.*, 220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536 (1911). In the case at bar, it is unnecessary to hold specifically that "CLASSIC" is inappropriate for trademark protection since we find no infringement. Additionally, the strength or weakness of a mark is but one element to be considered in determining whether confusion is likely to result. Moreover, the Supreme Court recently held that the holder of a registered mark may rely on incontestability to enjoin infringement and that such an action may not be defended on the ground that the mark is merely descriptive. *See Park 'N Fly v. Dollar Park And Fly*, 469 U.S. 189, 205, 105 S.Ct. 658, 667, 83 L.Ed.2d 582, 594 (1985). Naturally, however, absence of likelihood of confusion remains a valid defense to an infringement claim. Therefore, we shall address the "merely descriptive" status of CLASSIC merely as one factor of many in determining likelihood of confusion.

*Applicable Law*

CLASSIC's line of car wash products have been sold to a limited degree in the distant past in Tennessee, and Wynn there-

---

**1.** The evidence is conclusive, and the defendant concedes that Wynn had prior use of the name CLASSIC.

fore claims that the defendant has infringed its exclusive claim to the mark CLASSIC by operating car washes under the name Classic Car Wash.[2] Wynn charges the defendant with violations of two sections of the Lanham Act, section 32, 15 U.S.C. § 1114 (trademark infringement) and section 43, 15 U.S.C. § 1125 (false designation of origin). Section 32(1)(a) provides in pertinent part:

Any person who shall, without the consent of the registrant use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale ... of any goods or services or in connection with which such use is *likely to cause confusion,* or to cause mistake, or to deceive ... shall be liable in a civil action by the registrant.

15 U.S.C. § 1114(1) (emphasis added.)

Section 43(a) provides in pertinent part:

Any person who shall affix, apply, or annex, or use in connection with any goods or services, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a).

■ While unfair competition is a broad field within which lies the concept of trademark infringement,[3] the standard for relief is substantially identical—likelihood of confusion. Therefore, the alleged violations of unfair competition and trademark infringement will be addressed jointly.

■ Title 15, U.S.C. § 1115 provides that registration of any trademark is admissible in evidence and is *prima facie*

evidence of the registrant's exclusive right to use the mark in commerce on the goods or services specified in the registration. A mark which has become incontestable[4] is conclusive evidence of the registrant's exclusive right to use the mark. The major purpose for (and benefit of) federal trademark registration is protection of the registrant from cancellation of its mark. Even a registrant with an incontestable mark retains the burden of proving infringement in order to prevail in a suit brought under the Lanham Act.

■ The Sixth Circuit Court of Appeals has adopted from the Ninth Circuit the following eight factors which are relevant to a determination of likelihood of confusion:

1. strength of the plaintiff's mark;
2. relatedness of the goods;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. likely degree of purchaser care;
7. defendant's intent in selecting the mark; and
8. likelihood of expansion of the product lines.

*Frisch's Restaurants v. Elby's Big Boy,* 670 F.2d 642, 648 (6th Cir.1982).

Each of the eight elements set out above is not necessarily entitled to equal consideration in the analysis of likelihood of confusion. Naturally the factors outlined above are to be evaluated in light of the circumstances of each individual factual scenario; therefore, some factors may be weighed more heavily than others.

*Strength of Mark*

■ As addressed herein *supra,* CLASSIC is an inherently weak mark. Standing alone, the word "classic" is frequently used in its generic sense to describe a virtual

---

**2.** Noting that direct competition between products and services is not a prerequisite to protective relief, *see Induct-O-Matic,* 747 F.2d at 362, the court will examine the substance of Wynn's argument.

**3.** *See Jewel Companies, Inc. v. Westhall Co.,* 413 F.Supp. 994, 999 (N.D.Ohio 1976).

**4.** A mark attains "incontestability" by continuous use for five consecutive years subsequent to the date of registration, provided said mark is still in use in commerce. *See* 15 U.S.C. § 1065.

panoply of goods and services. Additionally, the record is devoid of evidence tending to show that CLASSIC has acquired a secondary meaning. Wynn's sales revenues and advertising expenses do not prove secondary meaning. *See Truckstops Corp. of America v. C–Poultry Co.*, 596 F.Supp., at 1099. Such an ineffective mark is entitled to little, if any protection.

*Relatedness of Goods*

The car care *products* sold by Wynn under the mark CLASSIC—waxes, finishes, and the like—bear a moderate degree of similarity to the *services* provided by the defendant.[5] The court recognizes that similarity may exist between goods and services, but where a plaintiff sells car care products for consumer use and a defendant provides full-service washing and waxing, the relatedness naturally diminishes. The defendant's sales of bulk car wax bears a greater degree of similarity to the plaintiff's products. However, sales of industrial bulk wax intended for use in an automatic operation differs markedly from sales of individual cans of wax for consumer use. Additionally, defendant sells bulk

wax to a very limited number of customers for reuse only in their car wash operations. Therefore, while the goods involved herein are alike in the broad sense of their connection to automobile care, they are distinctively dissimilar because of the markets to which they appeal, in particular the individual consumer versus the industrial purchaser.

*Similarity of the Marks*

It is clear that both marks prominently display the word "classic." However, similarity of appearance is determined on the basis of the total effect of the designation rather than a comparison of individual features. The "overall impression" is the critical consideration. *WLWC Centers Inc. v. Winners Corp.,* 563 F.Supp. 717, 725 (M.D. Tenn.1983). Initially, a disparity in the marks is apparent since the defendant's mark appears in print type lettering with a mixture of upper and lower case letters, while the plaintiff's mark is designed in script lettering similar to calligraphy. A reproduction of the marks below illustrates the general difference in the marks.

5. The defendant sells retail items at his car wash operations, including floor mats, litter baskets, snack trays, air fragrances and steering wheel covers. It is significant, however, that he does not sell cans of car wax.

**plaintiff's mark**                       **defendant's mark**

### Actual Confusion

■ The fourth factor for the court's consideration, actual evidence of actual confusion, is the most important element in determining likelihood of confusion. While evidence of actual confusion is not a prerequisite to a finding of likelihood of confusion, it is undoubtedly the best evidence of likelihood of confusion. *See e.g., Frisch's Restaurants, Inc. v. Elby's Big Boy, supra.* The record discloses no known or demonstrated instances of actual confusion by the individual consumer or the industrial market. Testimony by Wynn's legal counsel established that Wynn's major concern regarding confusion by consumers who encounter the defendant's operation lies with their licensee, Classic Car Wash, and its car washing *services*, which will be discussed hereinafter. Wynn's in-house attorney further speculated that confusion between the defendant's *services* and the plaintiff's

*products* was a "good possibility," but offered no proof to support that position. The plaintiff's claim fails miserably with respect to this significant factor.

### Marketing Channels

This lack of actual confusion may be largely attributable to an analysis of the next factor—marketing channels used. Wynn markets its product through a rather extensive advertising program including slicks provided to retailers, a co-op program with retailers, and advertisements in trade publications. The defendant's advertising is primarily aimed at a local market, including newspaper, radio and local television.[6] While some of the trade publications in which Wynn advertises are undoubtedly circulated in the area of the defendant's marketplace, it appears that little other, if any, overlap of marketing effort occurs. In short, Wynn conducts a sophis-

---

**6.** The defendant also advertises in the yellow pages of two metropolitan areas, Atlanta and Memphis. The proof is unclear regarding advertising by Wynn for CLASSIC in those two areas. In any event, a mere two instances of overlap in advertising is insufficient to establish a likelihood of confusion. Additionally, the 2–by 1/2–inch ads solicit purchasers of industrial equipment, not individual consumers.

ticated advertising program which touches many areas of the country, but which appears to have little impact in the specific areas where defendant owns car washes. The defendant's advertising budget pales in comparison due to its primarily local focus. Wynn has presented evidence which clearly shows that CLASSIC products have been distributed in several major as well as smaller cities in Tennessee. However, this proof is rendered largely meaningless for two reasons. First, the customer histories and sales records presented are primarily drawn from 1976 and 1977 with no records more recent than 1980—a full five years prior to the date of this hearing. Second, the sales records do not differentiate CLASSIC car care products from Classic Chemical products in general. On the basis of such obsolete and potentially misleading proof, the court declines to find similarity in marketing channels which results in confusion by consumers.

### Purchaser Care

The degree of care utilized by a consumer in selecting a car care product, the sixth factor for consideration, is not readily determinable. Since the vast majority of all consumers own automobiles, they are an inherently diverse group of people. The relatively low cost of car wax or polish, while not immaterial, is far from determinative. While some car owners would grab the first can of wax they see, it is reasonable to assume that an equal percentage will conduct a discriminating examination of the available products. Additionally, regular purchasers (composing the larger consumer market) become sophisticated in their selections, thereby attaining a greater degree of purchaser care. Likewise, the patrons of defendant's car wash may not be classified as a gullible bunch. Indeed, the consumer willing to dole out $10 to $15 for a wash job is likely to conduct at least a preliminary investigation of the facility. The court concludes that the likely degree of purchaser care under the facts of this case is greatly dependent upon the individual consumer, but generally higher than a casual or impulse purchase. This finding

preponderates against a likelihood of confusion.

### Defendant's Intent

Thomas's intent when adopting the mark "Classic Car Wash" is a critical factor, since if the mark was chosen with the intent of deriving benefit from the reputation of "CLASSIC," that fact alone "may be sufficient to justify the inference that there is confusing similarity." *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir.1980) quoting Restatement of Torts § 729, comment f (1938). Wynn has failed to show that Thomas's decision to include "Classic" in naming his car washes was to confuse, mislead or deceive the public. The defendant's testimony that he was unfamiliar with CLASSIC products prior to adopting the mark "Classic Car Wash" was credible. The fact that he attended three International Car Wash Association trade shows prior to 1981 is insufficient to establish that he knew of CLASSIC products, much less that he possessed an intent to falsely "pass off" his services as a branch of the plaintiff's industry.

### Expansion of the Product Lines

The final factor in determining a likelihood of confusion is the likelihod of expansion of the product lines. First, with regard to Wynn's expansion of the CLASSIC line of car care products, as noted previously, Wynn's proof concerning geographic area of sales and sales volume is of little assistance in assessing the likelihood of expansion in the sales of car care products by CLASSIC. The court finds it significant that Wynn Oil's annual sales for CLASSIC products has steadily declined since 1982, including a 37 percent drop in annual sales in 1983. It appears more likely that Wynn's sales area will decrease rather than expand.

The defendant has expanded his car wash operation from one station in 1980 to five in 1985. Although it is reasonable to assume that he may continue to open car washes in other cities, the defendant's testimony is undisputed that he does not plan to expand Classic Car Wash outside Tennessee. Therefore, it is unlikely that either

party's market will expand so as to increase the likelihood of confusion.

In summary, the court finds that Wynn has failed to sustain its burden of proving that the defendant has infringed its rights to the trademark "CLASSIC." The Clerk will enter a judgment in favor of the defendant on the claim by plaintiff Wynn Oil Company.

### CLASSIC CAR WASH, INC. V. THOMAS

■ The court will now address the claims by Classic Car Wash, Inc. against the defendant for federal trademark infringement and federal unfair competition. The eight-factor analysis set forth in *Elby's Big Boy, supra,* will again be utilized.

#### Plaintiff's Standing

Before making any factual findings, however, the court will examine the plaintiff Classic Car Wash, Inc.'s posture in this case regarding standing to sue. Wynn Oil Co. registered the service mark "Classic Car Wash" on February 22, 1983. Wynn, however, has never operated any car washes under the service mark, nor does it sell products bearing the mark "Classic Car Wash."[7] Classic Car Wash, Inc., purports to own a license from Wynn Oil to use the service mark "Classic Car Wash," and regularly uses the service mark to identify its car wash operations and franchises. However, Classic Car Wash, Inc., derives its right to the service mark solely through the license agreement from Wynn which the plaintiffs failed to produce at trial. Although they were admonished and cautioned that production of the licensing agreement was essential to maintain their claim to the service mark "Classic Car

Wash," they did not enter the licensing agreement as evidence.[8] The license is important for the court's determination in order to show both the date of first use by Classic Car Wash—a material issue—and more fundamentally, to establish Classic Car Wash, Inc.'s standing to bring this lawsuit. While we are inclined to summarily disregard the plaintiff's claim entirely because of its blatant failure to provide a crucial piece of evidence following a specific request from the court, we note that the plaintiff also asserts a claim under common law to the use of the mark prior to the licensing agreement. Without ruling on the validity of this common law claim and in an abundance of caution, the court will examine the likelihood of confusion without benefit of the licensing agreement which establishes Classic Car Wash, Inc.'s standing to sue.

#### Prior Use

As an initial matter, it appears that plaintiff Classic Car Wash and defendant Thomas adopted the name "Classic Car Wash" at about the same time. The plaintiff used the name and described his concept in a letter to a car wash manufacturer on August 17, 1979. This "use," of course, was rather private and at that time made known only to a select few. The first sign depicting the Classic Car Wash logo in California was erected on January 18, 1980. Thomas testified his first use was in late 1979 and early 1980. He advertised the name in December of 1979 and purchased equipment which was shipped on December 20, 1979, to Classic Car Wash in Cookeville, Tennessee. The court finds, therefore, that the plaintiff has established prior use although only by a few months.[9]

---

**7.** Wynn markets a car wash product under the mark "CLASSIC," so that its name appears as "CLASSIC" Car Wash. It is apparent, however, by the small "®" following CLASSIC that only CLASSIC is trademarked by Wynn, and "Car Wash" is the generic name of the product.

**8.** Plaintiffs' counsel promised to file the agreement the following day, but neglected or refused to ever do so.

**9.** Our interpretation of first use is based on testimony by the parties which rewards both

plaintiff and defendant with an earlier first use date than would a strict construction of the following legal documentation. The proof shows that Wynn Oil acquired the mark for Classic Car Wash from Classic Chemical in January 1982 and thereafter licensed the name to Classic Car Wash, Inc. The date of CCW's first use pursuant to the agreement is impossible to ascertain since the licensing agreement was not produced. Thomas's state trademark application indicates January 24, 1980, as his first use date.

### Strength of the Mark

To commence the *Elby's Big Boy* eight-step analysis, the court will examine the strength of the plaintiff's mark. The mark "Classic Car Wash" entails many of the problems enumerated *supra* with regard to the mark CLASSIC, since the words "car wash" standing alone are incapable of exclusive appropriation as a trademark because of their common, generic use. 74 Am.Jur. *Trademarks and Tradenames,* § 52 (1974). At best, "Classic Car Wash" is a descriptive term, and the court finds that it has failed to acquire a secondary meaning. It cannot be said that "Classic Car Wash" is distinctive of the plaintiff's services so that it deserves extensive protection.

### Relatedness of Services

The services provided by the parties are closely related. Both provide full-service car washing operations. However, at the defendant's car wash you simply step out of your car and into the small lobby while the attendants run your automobile through the single-purpose building for a wash job. At the plaintiff's "theme" car wash, you may get your shoes shined while you wait, drink free coffee or cider, or muse at the duck pond near the wash tunnel. The defendant's operations are all simple buildings with a singular utilitarian purpose—washing your car. The plaintiff's car washes are truly showplaces—one a reproduction of a river boat; another a turn-of-the-century victorian home featuring barnyard animals, antique farm equipment and a general store. Only the most non-observant consumer could visit the plaintiff's whimsical facility and later mistake the defendant's ordinary operation for one of the plaintiff's car washes.

### Similarity of Marks

While the parties' trade names are identical, their overall impression is quite dissimilar. The plaintiff's logo, which appears on all its merchandising brochures as well as on its structures, is a distinctive design with script lettering. On the other hand, the defendant's mark is displayed in simple block letters. The marks are reproduced below to illustrate the difference in appearance.

**plaintiff's mark**   **defendant's mark**

### Actual Confusion

The plaintiff has failed to produce a single instance of *actual* confusion between his car wash operation and that of the defendant. The lack of such actual confusion over a period of at least five years is

highly indicative of a total absence of confusion.

*Marketing Channels*

The plaintiff markets its car wash operations and particularly its franchises regularly in the *Wall Street Journal.* Additionally, it advertises in car washing trade magazines as well as the local (presumably California) yellow pages, newspaper, and television. It has expended approximately $889,229 over the course of five years on advertising expenses. As noted above, the defendant has spent approximately $15,000 marketing his services. Some overlap of market areas is inevitable since the publications in which plaintiff advertises are circulated within the defendant's territory. However, it is significant that the massive advertising which plaintiff undertakes is directed primarily at potential franchisees, not potential users of the car washes. Neither the areas nor the mode of advertising is so similar as to create a likelihood of confusion in the minds of reasonably prudent consumers. It is incredulous to assume that a Tennessee resident hearing or seeing the defendant's ads for his local car washes would be confused as to the source and origin and misled into thinking that his facility was a spawn from the fancy operation of the plaintiff.

*Purchaser Care*

The relatively low cost of a car wash mitigates in favor of a low degree of purchaser care. However, a consumer who will choose to pay two to three times the amount of a coin-operated car wash for the services provided by a full-service car wash is likely to possess a certain level of selectivity.

*Defendant's Intent*

The plaintiff has produced absolutely no evidence tending to show that the defendant intended to deceive the public when he adopted the name "Classic Car Wash." To the contrary, the president of Classic Car Wash, Inc., Edward Mongiovi, testified candidly that Mr. Thomas "probably did not know that there was a mark that would prevent [him] from using that name." Moreover, since Mongiovi chose the name only a few months earlier than Thomas, it is implausible that Thomas intended to infringe upon the plaintiff's name. At that point in time, the California Classic Car Wash scheme was still in its infancy.

*Expansion of the Services*

The plaintiff currently owns or franchises car wash operations in California, Florida, Texas, Idaho, Missouri, Nevada, and Alabama. Additional car washes are under construction in California, Texas, and Colorado. Options for franchises have been awarded in Colorado, Georgia, Arizona, California, and Florida. Based on the foregoing data and the steadily increasing gross revenues of Classic Car Wash, Inc., the court finds the plaintiff's expansion prospects are good. As noted hereinbefore, the defendant does not plan to expand outside Tennessee.

The court concludes on the basis of the foregoing factual findings that there is not a likelihood of confusion between the plaintiff's and the defendant's car wash businesses. Consequently, the plaintiff has failed to sustain its burden of proving either trademark infringement or unfair competition by the defendant.

*Pendent State Claims*

As to the plaintiff's remaining claims, the foregoing findings support the court's conclusion that the defendant is not guilty of trademark dilution or injury to business reputation under T.C.A. § 47–25–512 or violation of the Tennessee Consumer Protection Act, T.C.A. § 47–18–104. Regarding the plaintiff's claim of fraudulent state service mark registration by the defendant, T.C.A. § 47–25–503(4) requires the applicant to set forth his belief that "no other person has the right to use such mark in this state either in the identical form thereof or in such near resemblance thereto as might be calculated to deceive or to be mistaken therefor." The court finds that the plaintiff established that the defendant applied for state trademark registration *following* the receipt of the cease and desist letter from plaintiff's counsel. Although defendant had received plaintiff's letter and was aware of its claim, he was nevertheless justified in certifying the

above information since the plaintiff's first use date on its federal trademark registration is listed as March 1, 1980—at least two months following defendant's first use. Consequently, the court finds that the defendant was zealous in attempting to protect his name, at least locally, but that he was not fraudulent or deceptive in his efforts. The defendant is not guilty of common law unfair competition or trademark infringement.

## THOMAS V. WYNN OIL AND CLASSIC CAR WASH, INC.

Turning now to the defendant's counterclaim, the court notes initially that the defendant assumed a defensive posture in this case, producing little evidence tending to establish proper grounds for cancellation or that the plaintiff had infringed his mark under T.C.A. § 47–18–104. The court finds the record devoid of proof that the plaintiff ever attempted to "palm off" its services as those of the defendants or that it has infringed upon its registered mark in the state of Tennessee in violation of T.C.A. § 47–25–511. Indeed, had such proof emerged, the court's analysis would have been identical to the foregoing factual findings resulting in a finding of no infringement due to an absence of likelihood of confusion. The plaintiffs have not committed common law unfair competition or trademark infringement. Therefore, judgement shall be entered for the plaintiffs under the defendant's counterclaim.

*Good Faith Prior Use Defense*

█ Even if this court had found a likelihood of confusion between the California Classic Car Wash, Inc., and the Tennessee Classic Car Wash, the defendant Thomas would still be entitled to partially prevail under the good faith prior user defense of 15 U.S.C. § 1115(b)(5). The facts clearly establish that Thomas adopted the mark Classic Car Wash for use in Cookeville, Tennessee without knowledge of the registration's prior use before the mark was federally registered and the mark has been continuously used in Cookeville since such time. This defense is inapplicable to defendant's car washes in Cleveland, Oak Ridge, and Knoxville, since they were purchased or built after February 22, 1983, *subsequent* to the plaintiff's federal registration. Consequently, even if a likelihood of confusion was found to exist, the defendant has an absolute right to use the mark in the area where it has been used prior to plaintiff's registration, to-wit: Cookeville, Tennessee. *Cf. Old Dutch Foods, Inc., v. Dan Dee Pretzel and Potato Chip Co.*, 477 F.2d 150, 157 (6th Cir. 1973).

## CONCLUSION

In summary, we find no likelihood of confusion between the plaintiff, Classic Car Wash, Inc., and the defendant Michael Thomas's Classic Car Wash, and therefore the defendant is not guilty of infringing the plaintiff's mark. Accordingly, the plaintiff, Classic Car Wash, Inc., is entitled to no relief, and this action shall be dismissed.