**WILLOWBROOK HOME HEALTH CARE AGENCY, INC.,**
**Plaintiff–Appellant,**

**v.**

**WILLOW BROOK RETIREMENT CENTER, Hardaway Management Company, L.H. Hardaway, Jr., Imperial Associates, Inc., General Partner, and Imperial Associates, Inc., Limited Partner d/b/a Willow Brook Towers, Limited, Defendants–Appellees.**

Court of Appeals of Tennessee,
Middle Section,
at Nashville.

Dec. 14, 1988.

Application for Permission to Appeal
Denied by Supreme Court
April 3, 1989.

Irwin Venick, Woods & Woods, Nashville, for plaintiff-appellant.

Charles W. Bone, L.H. Armistead, III, Janet P. Medlin, Baker, Worthington, Crossley, Stansberry & Woolf, Nashville, for defendants-appellees.

## OPINION

LEWIS, Judge.

Plaintiff Willowbrook Home Health Care Agency, Inc. (Willowbrook) filed its complaint against defendants, Willow Brook Retirement Center, Hardaway Management Company, L.H. Hardaway, Jr., Imperial Associates, Inc., Limited, d/b/a Willow Brook Towers, Limited (hereafter defendants), and alleged that Defendants were guilty of unfair competition and trade name, trademark, and service mark infringement of plaintiff's name and mark.

At the conclusion of the plaintiff's proof, the Chancellor granted the defendants' motion to dismiss. From the dismissal of its complaint, plaintiff has appealed.

The pertinent facts are as follows:

Plaintiff was incorporated in 1981. It provides home health care services to the elderly. Plaintiff's home health care services include "physical therapy, skilled nursing, home health aid, occupational therapy, speech therapy, and medical social services." In 1985, plaintiff registered its name "Willowbrook Home Health Care, Inc." and its Willow Tree logo with the State of Tennessee.

Defendants are in the business of leasing apartments to the elderly. Defendants own, operate and manage a "retirement center." While defendants' services to the elderly include maid service and recreational activities, defendants are principally in the business of running their "retirement center." Defendants began operating under the name "Willow Brook Retirement Center" in September or October of 1985.

There is a similarity between the first word of plaintiff's name, Willowbrook, and the first two words of defendants' name, Willow Brook. This similarity has created a degree of confusion between plaintiff and defendants. Plaintiff has received a number of phone calls for defendant, mail for the defendant has been misdelivered to plaintiff, and there have been incidents of confusion between the parties by various individuals.

The marks of plaintiff and defendant are somewhat similar. Both marks have a willow tree on them. However, plaintiff's mark is light green with plaintiff's full name, Willowbrook Home Health Care, Inc., at the top and a traditional etched-style willow tree next to a stream. Defendants' mark is dark green with only the words "Willow Brook" at the bottom and the willow tree is made up mainly of straight vertical lines for a more modern computer-style willow tree.

Plaintiff, in its brief, characterized the issue as: "Whether the decision of the Chancellor to grant a directed verdict should be reversed because the Chancellor failed to take the strongest legitimate view of the evidence in favor of the plaintiff."

We point out that both plaintiff and defendant incorrectly characterized defendant's motion to dismiss as a motion for a directed verdict. This was a non-jury trial. "In non-jury trials, a proper motion is a motion to dismiss pursuant to Tenn.R. Civ.P. 41.02(2)." *Scott v. Pulley,* 705 S.W. 2d 666, 672 (Tenn.App.1985).

Motions for a directed verdict are neither necessary nor proper in a case which is being tried without a jury. Motions for dismissal in non-jury cases under Rule 41.02(2), Tennessee Rules of Civil Procedure, and motions for directed verdicts in jury cases under Rule 50, Tennessee Rules of Civil Procedure, are somewhat similar, but, there is a fundamental difference between the two motions, in that, in the jury case, the judge is not the trier of facts while in the non-jury case he is the trier of the facts. In the jury case he must consider the evidence most favorably for the plaintiff, allow all reasonable inferences in plaintiff's favor and disregard all counteracting evidence, and, so considered, if there is any material evidence to support a verdict for plaintiff, he must deny the motion. But in the non-jury case, when a motion to dismiss is made at the close of plaintiff's case under Rule 41.02(2), the trial judge must impartially weigh and evaluate the evidence in the same manner as though he were making findings of fact at the conclusion of all the evidence for both parties, determine the facts of the case, apply the law to those facts, and, if the plaintiff's case has not been made out by a preponderance of the evidence, a judgment may be rendered against the plaintiff on the merits, or, the trial judge, in his discretion, may decline to render judgment until the close of all the evidence. The action should be dismissed if on the facts found and the applicable law the plaintiff has shown no right to relief.

*City of Columbia v. C.F.W. Construction Co.,* 557 S.W.2d 734, 740 (Tenn.1977).

We treat the defendants' motion for a directed verdict as a motion to dismiss pur-

suant to Rule 41.02(2), Tenn.R.Civ.P., and restate plaintiff's issue as follows: Does the evidence preponderate against the finding of the trial judge that the plaintiff had not made out its case by a preponderance of the evidence?

This Court's review of a motion to dismiss pursuant to Rule 41.02(2), Tenn.R. Civ.P., "shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn.R.App.P. 13(d).

The Chancellor, following the evidentiary hearing, found in pertinent part as follows:

1. The Court finds that the Plaintiff's mark is weak and that the mark was in use prior to the Plaintiff's business being organized and that the words, "willow" and "brook" are generic words. The word, "Willowbrook" is not used alone by either party in its name. It is used in conjunction with the entire name of each party.

2. The Court finds that the Plaintiff is licensed in the home health care business and that the Plaintiff is not in the business of leasing homes to elderly retired persons. The Court finds that the Defendant, Willow Brook Retirement Center, is not licensed to render home health care services and does not engage in such business. The Court finds to the contrary that the Defendant is in the business of leasing apartments to retired elderly persons.

3. The Court finds that the marks of the Plaintiff and the Defendants are dissimilar in several respects: The Plaintiff's mark is light green in color with a willow tree and a stream of water thereby. The Defendants' mark is dark green in color without a stream of water. The words "willow" and "brook" are joined in the Plaintiff's mark. In the Defendants' mark, the words "willow" and "brook" are separated.

4. The Court finds that confusion in this case is minimal at best and does not rise to the level for the relief prayed for by the Plaintiff.

5. The Court finds that the Plaintiff's principal marketing channels are employees, doctors and nurses, that some amount is spent in other channels but employees, doctors and nurses are the prevalent channels for referrals of the Plaintiff's business. The Defendants' marketing channels are extensively in the newspaper, television and radio industries with the assistance of an advertising agency.

6. The Court finds that the purchasers for health care and also retirement residences are likely to exercise great care in the selection of these services which are rendered by the Plaintiff and the Defendants.

7. The Court finds that the Defendants exercised no illegal or fraudulent intent in adopting the name "Willowbrook" [*sic*] as a part of its name.

8. The Court finds that there is not a likelihood of expansion of product lines which would be relevant to the issues in this case because both parties are in separate businesses. It is not likely that the Plaintiff's business, the health care business, [will] become involved in the retirement home business; that is, leasing apartments to elderly persons. The Court further finds that it would not be a likely expansion of the [Defendants'] business to go into the home health care business.

9. The Court finds that, based upon the factors enumerated above and the evidence in support of these factors, that there does not exist a likelihood of confusion between the names and marks of the Plaintiff and Defendants. The Court further finds that the Defendants have not infringed upon the name and mark of the Plaintiff.

10. The Court further finds that the Plaintiff has not proven that it has been damaged with irreparable harm by the Defendants' action in the use of the name and mark of "Willow Brook."

We begin our discussion by noting the distinction between "trademark" and

"trade name." While the same standards of protection apply to each, there is a distinction.

"Trademark" is defined as "any word, name, symbol, or device, or any combination thereof, adopted and used by a person to identify goods made or sold by him and to distinguish them from goods made or sold by others." "Trade name," on the other hand, means "a word, name, symbol, device, or any combination thereof, used by a person to identify his business, vocation, or occupation and distinguish it from the business, vocation, or occupation of others." Tenn.Code Ann. § 47–25–501(6), (7).

■■■ The word "Willowbrook" as used by the plaintiff is a "trade name." Plaintiff's mark, the willow tree and stream with plaintiff's name thereby, is a "trademark."

We now determine whether the evidence preponderates against the Chancellor's finding that plaintiff's mark is weak.

Both plaintiff and defendants acknowledged that trademarks and trade names are classified in the ascending order of legal protection afforded them as "generic," "descriptive," "suggestive," and "arbitrary" or "fanciful." *Men of Measure Clothing, Inc. v. Men of Measure, Inc.*, 710 S.W.2d 43, 46 (Tenn.App.1985) (citations omitted). However, plaintiff vigorously disputes the Chancellor's determination "that the words 'willow' and 'brook' are generic words" and that, since neither party uses "Willowbrook" alone in its name, "Plaintiff's mark is weak."

■■■ "Arbitrary" or "fanciful" terms are the strongest marks since they are naturally distinctive. They have no logical or suggestive relationship to the goods with which they are used [for example, Exxon and Xerox]. *Pizzazz Pizza & Restaurant v. Taco Bell Corp.*, 642 F.Supp. 88, 91 (N.D.Ohio 1986) (citations omitted). A term is "suggestive" if it requires imagination, perception and thought to reach a conclusion as to the nature of the goods.

*Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (2nd Cir.1976) (citations omitted). "Country Pride" is an example of a "suggestive" mark. *Truckstops Corp. v. C–Poultry Co.*, 596 F.Supp. 1094, 1097 (M.D.Tenn.1983). A term is merely "descriptive" if it "conveys an immediate idea of the ingredients, qualities, or characteristics of the goods. ["Rubbermaid," for example]." *Abercrombie*, 537 F.2d at 11 (citations omitted). Finally, a "generic" term simply means a class of goods, for example oats. It cannot become a trademark. *Pizzazz Pizza & Restaurant*, 642 F.Supp. at 91 (citations omitted).

Plaintiff argues the name "Willowbrook" is properly classified as "fanciful" and "arbitrary" or, in the alternative, as a "suggestive" mark. Plaintiff points out "Willowbrook" is a combination of two words that "does not connote or imply any kind of health care or nursing services" for the elderly and that "Willowbrook" connotes a "cool, calm atmosphere in which care and attention are provided for its clients."

Defendants contend the words "willow" and "brook" are common English nouns and, therefore, generic words. Defendants aver the combination of the words "willow" and "brook" in the name "Willowbrook" does not rise to the level of trademark [or trade name] protection.

■■■ The Chancellor concluded that plaintiff's mark is weak because it is made up of the "generic" words "willow" and "brook." However, simply because a trade name is made up of two "generic" words, that trade name is not itself necessarily "generic." In fact, a trade name made up of two generic words may be a "suggestive" trade name. *See Truckstops*, 596 F.Supp. at 1097 ("Country Pride" found to be a suggestive mark).

■■■ The term "willowbrook" is not naturally distinctive. It is not "arbitrary" or "fanciful." "Willowbrook" does not convey an idea of a home health care agency. It is not descriptive. "Willowbrook" does not name a class of goods. It is not "generic."

Plaintiff, under the evidence in the record before us, is correct that "Willowbrook" connotes a cool, calm atmosphere. Through the use of imagination, perception and thought, one may reach a conclusion as to the quality of services provided by plaintiff. The term "Willowbrook" is a "suggestive" term. "Willowbrook" is, under the evidence in the record, eligible for trade name status and is accorded the legal protection of a "suggestive" mark.

The evidence in the record preponderates against the Chancellor's conclusion that "Willowbrook" is a "generic" mark.

The governing issue in trademark and trade name infringement is whether the purported infringer's use of a particular mark "is likely to cause confusion." *WSM, Inc. v. Bailey,* 297 F.Supp. 870, 872 (M.D. Tenn.1969) (citations omitted).

In *Frisch's Restaurant, Inc. v. Elby's Big Boy, Inc.,* 670 F.2d 642, 648 (6th Cir. 1982) (citations omitted), the Court identified eight factors to be considered in determining the likelihood of confusion between trademarks. They are: (1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; (8) likelihood of expansion of the product line.

We have determined the strength of the plaintiff's mark, and now discuss the relatedness of the goods.

■ Defendants point out that plaintiff is in the business of "offering home health care services to the elderly," while defendants are in the "retirement center business." We agree that plaintiff and defendants are not in the precise same business. However, because it is confusion, or the likelihood of confusion, that is the test of infringement, direct competition between the services in question is not a prerequisite to protection relief. *WSM,* 297 F.Supp. at 872. Thus, "the lack of competitiveness is not always dispositive of the question of confusion and hence infringement. One such relationship where this is true exists when the sponsor or maker of one business or product might naturally be assumed to be the maker or sponsor of another business or product." *World Carpets, Inc. v. Littrell's New World Carpets,* 438 F.2d 482, 488 (5th Cir.1971).

■ Here, both parties provide services that attempt to meet health and personal security concerns. Both parties' services are directed towards the elderly. In response to a hypothetical question by plaintiff, an expert in marketing consultation characterized the services offered by plaintiff and defendant as "complimentary."

The evidence here preponderates in favor of the conclusion that the relatedness of the services provided by the parties caused confusion over the origin of the parties' services.

Plaintiff contends the names of the parties are "essentially indistinguishable" and concludes that the Chancellor, in finding that the parties' marks are dissimilar, "ignored material evidence presented at trial."

■ In evaluating the similarity of marks, "side by side" comparison is not the test. *Wynn Oil Co. v. Thomas,* 839 F.2d 1183, 1187 (6th Cir.1988). Instead, "the marks must be compared in the light of what occurs in the market place, not in the courtroom." *Beer Nuts, Inc. v. Clover Club Foods Co.,* 711 F.2d 934, 941 (10th Cir.1983) (citations omitted).

Following our review of the evidence as to the possibility of confusion in the marketplace, we conclude that the difference in the two marks is sufficient to deter any possibility of confusion between the two parties.

We now turn to the evidence of actual confusion. We agree with plaintiff that the similarity of the parties' names has generated confusion among the public. The evidence clearly shows there have been numerous and continual misdirected phone calls, that mail has been misdelivered, and

that there has been patient confusion and assumed affiliation.

We disagree with the Chancellor's finding that confusion is minimal in this case. The evidence shows incident after incident of confusion between the parties by the public. There is sufficient evidence of actual confusion to preponderate against the Chancellor's finding.

Also relevant to the likelihood of confusion are the marketing channels used by the parties. The Chancellor found the defendants' marketing channels are "extensively in the newspaper, television and radio industries with the assistance of an advertising agency." Plaintiff's advertising is principally by word of mouth from doctors and other health-care employees. Plaintiff also advertises in the yellow pages. While we agree the marketing channels actually used do not significantly overlap, we do find the means utilized still create some likelihood of confusion. Plaintiff does advertise in the same geographic areas as defendants, and both plaintiff and defendants advertise in the yellow pages. Thus, some marketing overlap inevitably occurs.

Individuals seeking the services offered by both plaintiff and defendants are likely to exercise a high degree of care in making their choice. Yet, clearly the record shows there has been confusion by the public between plaintiff's and defendants' services. This confusion has manifested itself both in senior citizens and in other adults seeking to aid the seniors in their choice.

There is no evidence to indicate any illegal or fraudulent intent by either party.

While plaintiff has discussed the possibility of future product line expansion, there is no likelihood of product expansion at this time. We therefore agree there is no "likelihood" of expansion by plaintiff. The only proof offered by plaintiff is testimony that product expansion has been "discussed."

■ The key element in any trademark and trade name infringement action is the likelihood of confusion. *Truckstops*, 596

F.Supp. at 1096. There is no necessity of actual confusion required. The Court may conclude there is a likelihood of confusion even in a case where there is no evidence of actual confusion. *Wynn Oil Co.*, 839 F.2d at 1188; *WSM*, 297 F.Supp. at 872.

Evidence of actual confusion is "undoubtedly the best evidence of the likelihood of confusion." *Wynn Oil Co.* 839 F.2d at 1188. We find there is evidence of actual confusion by the public between the parties and the services they offer. The evidence preponderates against the Chancellor's judgment granting the defendants' motion to dismiss at the close of the plaintiff's proof.

The judgment of the Chancellor is therefore reversed and the cause remanded to the Chancery Court for further proceedings and for the collection of costs, which are assessed to the defendants.

CANTRELL and KOCH, JJ., concur.